FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 20, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEVEN LEE BROWN, | No. 1:17-cv-03056-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 16 |

BEFORE THE COURT are the parties' Cross-motions for Summary Judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 3. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion (ECF No. 15) and grants Defendant's Motion (ECF No. 16).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.

Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  Second, the claimant's

impairment must be "of such severity that he is not only unable to do his previous

work[,] but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).  At step one, the Commissioner

ORDER - 3

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

In January 2014, Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income, alleging an onset date of July 1, 2009. Tr. 187-96. The applications were denied initially, Tr. 114-28, and on reconsideration, Tr. 130-39. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on August 4, 2015. Tr. 30-68. On August 12, 2015, the ALJ denied Plaintiff's claim. Tr. 11-24.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 1, 2009. Tr. 13. At step two, the ALJ found Plaintiff has the following severe impairments: right ankle

impairment, organic cognitive disorder, affective disorder, anxiety disorder, personality disorder, and substance use disorder. Tr. 13. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 14. The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following limitations:

> [H]e cannot climb ladders, rope, or scaffolding. He can frequently handle and finger. He should avoid concentrated exposure to vibration, extreme cold, and workplace hazards. He should avoid concentrated exposure to pulmonary irritants. He can perform simple and routine tasks. He can have superficial interaction with coworkers. Interaction with the public should not be a required element of his job duties.

Tr. 16.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 22. At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as industrial cleaner, laundry worker II, store laborer, production assembler, cleaner/housekeeper, and hand packager. Tr. 23. On January 23, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 7

**ISSUES**

2      Plaintiff seeks judicial review of the Commissioner's final decision denying

3  him disability insurance benefits under Title II and supplemental security income

4  benefits under Title XVI of the Social Security Act.  Plaintiff raises the following

5  issues for review:

6        1.  Whether the ALJ properly evaluated Plaintiff's symptom complaints; and

7        2.  Whether the ALJ properly evaluated the medical opinion evidence.

8  ECF No. 15 at 6.

**DISCUSSION**

**A. Plaintiff's Symptom Testimony**

11      Plaintiff faults the ALJ for failing to rely on reasons that were clear and

12  convincing in discrediting his symptom claims.  ECF No. 15 at 6-17.  An ALJ

13  engages in a two-step analysis to determine whether a claimant's testimony

14  regarding subjective pain or symptoms is credible.  "First, the ALJ must determine

15  whether there is objective medical evidence of an underlying impairment which

16  could reasonably be expected to produce the pain or other symptoms alleged."

17  *Molina,* 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

18  required to show that [his] impairment could reasonably be expected to cause the

19  severity of the symptom []he has alleged; []he need only show that it could

20

ORDER - 8

reasonably have caused some degree of the symptom."  *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the intensity, persistence, and limiting effects of his symptoms was not credible. Tr. 17.

### 1. Inconsistent with Medical Evidence

The ALJ found Plaintiff's symptom testimony was inconsistent with the longitudinal medical record. Tr. 17-18. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c), 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found Plaintiff's symptom testimony about his ankle pain was not supported by the medical evidence, which showed substantial improvement in

Plaintiff's condition and did not corroborate the level of impairment Plaintiff alleged. Tr. 17-18. At the hearing, Plaintiff testified that following his ankle surgery, he experienced sharp pains when he walked, numbness, swelling, and that he needed to elevate his leg over his heart several times per day to control the swelling. Tr. 42-43. As the ALJ noted, Plaintiff had successful ankle surgery in November 2013. Tr. 18, *see* Tr. 308-10. On March 4, 2014, Plaintiff reported he felt 75% improved. Tr. 370. The ALJ observed Plaintiff's treatment notes after the surgery show he was regularly observed to have normal gait and station, normal movement, and normal muscle strength. Tr. 18; *see* Tr. 399 (no abnormal movement, good station and gait, good muscle strength), Tr. 429 (no abnormal movement, station and gait unimpaired, good muscle strength), Tr. 435 (same), Tr. 438 (same), Tr. 445 (same), Tr. 451 (same), Tr. 457 (same). In May 2015, three months before the hearing, Plaintiff specifically denied difficulty walking. Tr. 390. The ALJ also noted that Plaintiff's treatment records do not show a record of chronic swelling, numbness, or a need to elevate his leg. Tr. 18. The ALJ reasonably concluded that the medical record failed to support Plaintiff's subjective symptom testimony regarding his ankle impairment after surgery.

The ALJ similarly found the medical evidence did not support Plaintiff's mental health symptom complaints. Tr. 18. Plaintiff testified that he experienced constant anxiety, was prone to anxiety attacks around other people, that he had

several anxiety attacks per day lasting 30-40 minutes at a time, and that his depression caused him to break down and cry several times per week. Tr. 38-39. However, the ALJ observed the medical record regularly showed Plaintiff demonstrated alert and cooperative behavior, normal speech, normal thought process, and good concentration and attention span. Tr. 18; *see* Tr. 399-400, 425, 429-30, 435-36, 438-39, 445-46, 451-52, 457-58. The record also shows Plaintiff demonstrating appropriate mood and affect. Tr. 298, 302, 306, 347, 360, 389-91, 436, 446, 469. The ALJ noted the record did not show a diagnosis of mental impairment until 2013, despite Plaintiff's alleged onset date in 2009. Tr. 18.

Plaintiff can identify some evidence in the record that shows abnormal mental health observations. ECF No. 15 at 9-10; *see* Tr. 274 (abnormal affect), Tr. 281-82 (abnormal mental status examination), Tr. 320-37 (observations of depressed mood). However, in reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund*, 253 F.3d at 1156. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1111. Even if Plaintiff can identify evidence that can be interpreted more favorably to Plaintiff's position, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld. *See Burch*, 400 F.3d at

679.  The lack of supporting medical evidence was a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

### 2. *Failure to Follow Treatment Recommendations*

The ALJ found Plaintiff's symptom testimony was inconsistent with Plaintiff's failure to follow treatment recommendations.  Tr. 18.  It is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility.  *See Molina*, 674 F.3d at 1113-14; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility).

The ALJ identified several instances where Plaintiff failed to follow treatment recommendations.  Tr. 18.  For example, Plaintiff was referred to physical therapy in March 2014, after his ankle surgery.  Tr. 370-71.  However, the ALJ observed the evidence shows no subsequent treatment record for Plaintiff's ankle impairment.  Tr. 18.  Plaintiff was referred to mental health counseling in April 2013 and declined the referral.  Tr. 274-75.  Plaintiff also reported ceasing to take prescribed medication because he felt it did not help him, and he failed to follow up for further care after ceasing the medication.  Tr. 273.

Plaintiff argues that his failure to seek treatment was due to his lack of medical insurance. ECF No. 15 at 8. Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Plaintiff cites one instance in the record where Plaintiff reported he did not seek medical attention after being hit by a car some time in 2012 because he did not have insurance. Tr. 318. However, Plaintiff's lack of insurance in 2012 does not explain his subsequent failure to follow treatment recommendations. Furthermore, the record shows Plaintiff was able to obtain medical treatment throughout the relevant time period despite his lack of insurance in 2012. *See, e.g.*, Tr. 308-10 (ankle surgery), Tr. 316-17 (MRI imaging), Tr. 393 (hand surgery).

Plaintiff argues that his failure to pursue treatment is attributable to his anxiety. ECF No. 15 at 7-8. In some cases, it may be inappropriate to consider a claimant's lack of treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina*, 674 F.3d at 1113-14. Here, the record fails to support Plaintiff's argument. The supporting evidence Plaintiff cites does not attribute Plaintiff's lack of treatment to anxiety. *See* Tr. 42 (Plaintiff does

not attribute failure to seek treatment due to anxiety), Tr. 304 (does not indicate why Plaintiff failed to seek earlier treatment), Tr. 354 (does not indicate why Plaintiff failed to seek earlier treatment), Tr. 465 (does not indicate why Plaintiff failed to seek treatment at time of hand injury). The only supporting evidence in the record is Plaintiff's own testimony that Plaintiff "couldn't calm [himself] down to go" seek medical treatment after having a gun pulled on him and escaping by running into traffic. Tr. 49. However, this one instance does not adequately explain Plaintiff's consistent history of failing to seek medical treatment. The ALJ reasonably concluded that Plaintiff's failure to seek treatment undermined the severity of his subjective symptom testimony. This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 3. Activities of Daily Living

The ALJ found Plaintiff's daily activities were inconsistent with the level of impairment he alleged. Tr. 19. A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work

setting."). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

Plaintiff testified that he experienced constant anxiety, that being in public or around other people caused anxiety attacks, and he could not stay in public places when he has anxiety attacks. Tr. 38. He further testified that his anxiety attacks lasted for thirty to forty minutes at a time and occurred several times per day. Tr. 38-39. The ALJ noted that these limitations were inconsistent with Plaintiff's travel. Plaintiff reported taking a three-week trip to Alaska to visit his brother. Tr. 46. Plaintiff reported taking a shuttle from Yakima to Seattle-Tacoma International Airport and flying from Seattle to Alaska. Tr. 45-46. While in Alaska, Plaintiff spent time with his brother and visited a bar. Tr. 46. The ALJ reasonably concluded that these activities were inconsistent with Plaintiff's testimony that he was unable to be around others without experiencing debilitating panic attacks. Tr. 19.

Plaintiff's function self-report also describes limitations in memory, completing tasks, concentration, understanding, following instructions, and getting

along with others, and states Plaintiff cannot pay attention for more than three minutes at a time. Tr. 234. The ALJ observed these limitations were inconsistent with Plaintiff's ability to complete his high school diploma through online classes, for which he worked over the course of several months. Tr. 19; *see* Tr. 463. Plaintiff's alleged inability to pay attention for more than three minutes at a time is also inconsistent with Plaintiff's hobby of playing multiplayer video games. Tr. 19; *see* Tr. 53-54. The inconsistencies between Plaintiff's testimony regarding his symptoms and his daily activities were a clear and convincing reason for the ALJ to discredit Plaintiff's symptom testimony.

### 4. Inconsistent Statements

The ALJ found Plaintiff's credibility was undercut by Plaintiff's inconsistent statements in the record. Tr. 19. In evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including prior inconsistent statements. *See Smolen,* 80 F.3d at 1284. Conflicting or inconsistent reporting of alcohol or drug use can also contribute to an adverse credibility finding. *See Thomas*, 278 F.3d at 959; *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ noted Plaintiff made inconsistent statements about his drug use history. Tr. 19. On August 6, 2013, Plaintiff reported a history of drug use but no current drug use. Tr. 318. On December 19, 2013, Plaintiff similarly reported a

ORDER - 17

history of drug use in his teens but no current drug use. Tr. 278. On April 22, 2014, Plaintiff reported smoking three to four marijuana joints daily. Tr. 399. However, on May 28, 2014, Plaintiff denied any history of substance abuse. Tr. 457. The ALJ reasonably concluded that this denial of substance abuse was inconsistent with Plaintiff's prior admissions of substance abuse.[1]

The ALJ also noted Plaintiff gave inconsistent reasons for why he was fired from his job at Dollar Tree. Tr. 19. During a 2013 therapy session, Plaintiff reported he lost his job because he was using his cell phone too frequently at work. Tr. 332-33. However, during the hearing, Plaintiff testified that he left his job at Dollar Tree because of mental health symptoms. Tr. 39. Upon further questioning by the ALJ, Plaintiff admitted he was fired from that job because he spent too

_____

[1] Plaintiff argues the ALJ improperly considered Plaintiff's substance abuse itself as a reason to discredit Plaintiff's credibility. ECF No. 15 at 13. However, the ALJ did not find Plaintiff not credible because of Plaintiff's history of substance abuse. Tr. 19. Rather, the ALJ's credibility determination was limited to Plaintiff's inconsistent statements about his substance use. *Id.* Defendant's discussion of Plaintiff's lack of status as a Washington medical marijuana patient is similarly nonresponsive to the ALJ's finding. ECF No. 16 at 9-10.

ORDER - 18

much time texting his friends.  Tr. 48.  Plaintiff offers a series of hypothetical explanations for Plaintiff's inconsistent statements, but these explanations do not have any basis in the record.  ECF No. 15 at 14.  The ALJ reasonably concluded that this inconsistent reporting undermined Plaintiff's credibility.  Even if Plaintiff can identify an interpretation of the evidence that is more favorable to Plaintiff's position, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld.  *See Burch*, 400 F.3d at 679.  This was a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

### 5.  Source of Anxiety

Finally, the ALJ observed Plaintiff's alleged fear of public settings was "not irrational" and "due to the situational consequences of his criminal history."  Tr. 20.  The ALJ failed to explain how the rationality of Plaintiff's fears is relevant to the ALJ's credibility analysis.  *See Wilson v. Comm'r, Soc. Sec. Admin.*, 2016 WL 1598867, at *9 (D. Or. Apr. 20, 2016).

Any error based on this observation is harmless.  A district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina*, 674 F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  Here, the ALJ identified several other clear and convincing reasons to discredit

ORDER - 19

Plaintiff's symptom testimony.  Consequently, any error is harmless and not grounds for reversal.  *Id.* at 1111.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Robert Bernardez-Fu, M.D.; Dan Donahue, Ph.D.; John Gilbert, Ph.D.; Philip Barnard, Ph.D.; Steven Johansen, Ph.D.; and Doyle Hardy, LMHC.  ECF No. 15 at 17-21.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by

ORDER - 20

substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

*1. State Reviewers – Dr. Donahue, Dr. Gilbert, Dr. Bernardez-Fu*

Dr. Donahue reviewed the record and opined Plaintiff was capable of simple and routine tasks; that Plaintiff could adhere to basic work structure and expectations despite variation in concentration, persistence, and pace; that Plaintiff would work best with simple and superficial social interactions; and that Plaintiff had no limitation in adaptation. Tr. 88-90. Dr. Gilbert reviewed the record and rendered the same opinions, and also opined Plaintiff did not have a medically determinable psychological impairment through his date of last insured in June 2010. Tr. 102-04, 111. Dr. Bernardez-Fu reviewed the record and opined Plaintiff was capable of performing medium work, except he should avoid concentrated exposure to vibration and extreme cold; that Plaintiff should avoid even moderate

exposure to workplace hazards; that Plaintiff had no postural or manipulative

limitations; and that there was insufficient evidence of any physical impairment

through Defendant's date of last insured. Tr. 101-02, 111. The ALJ gave each of

these reviewers' opinions significant weight. Tr. 20, 22.

Plaintiff contends the ALJ erred by giving significant weight to the opinions

of Dr. Donahue, Dr. Gilbert, and Dr. Bernardez-Fu, all reviewing physicians, and

some or minimal weight to Plaintiff's treating or examining providers. ECF No.

15 at 17-18. The opinion of a nonexamining physician may serve as substantial

evidence if it is supported by other evidence in the record and is consistent with it.

*Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Other cases have upheld

the rejection of an examining or treating physician based in part on the testimony

of a non-examining medical advisor when other reasons to reject the opinions of

examining and treating physicians exist independent of the non-examining doctor's

opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-

55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from

examining physicians and testimony from claimant that conflicted with treating

physician's opinion)); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)

(rejection of examining psychologist's functional assessment which conflicted with

his own written report and test results). Thus, case law requires not only an

opinion from the consulting physician but also substantial evidence (more than a

ORDER - 22

mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

The ALJ found the opinions of Dr. Donahue and Dr. Gilbert were consistent with Plaintiff's medical records, examination findings, and Plaintiff's reported activities. Tr. 22. The ALJ similarly found Dr. Bernardez-Fu's opinions were supported by Plaintiff's examination findings and treatment records. Tr. 21-22. Plaintiff suggests the ALJ should have credited the opinions of Plaintiff's treating and examining providers over the opinions of the reviewing doctors. However, as discussed *infra*, the ALJ provided legally sufficient reasons for giving less weight to the treating and examining providers and for giving more weight to the reviewing doctors' opinions.

### 2. Dr. Barnard

Dr. Barnard examined Plaintiff on December 19, 2013, and opined Plaintiff's anxiety would affect his ability to work on a daily basis to a moderate extent; that Plaintiff would have moderate limitations in his ability to understand, remember, and persist, to learn new tasks by following very short and simple instructions, to perform routine tasks without special supervision, be aware of normal hazards and take precautions, ask simple questions or request assistance, and set realistic goals and plan independently; that Plaintiff would have marked

limitations in his ability to understand, remember, and persist, to learn new tasks by following detailed instructions, perform activities within a schedule, and make simple work related decisions; and that Plaintiff would have severe limitations in his ability to communicate and perform effectively in a work setting, complete a normal workday without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting.  Tr. 279-80.  Because Dr. Barnard's opinion was contradicted by Dr. Donahue, Tr. 88-90, and Dr. Gilbert, Tr. 101-02, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Barnard did not adequately explain his opinion.  Tr. 21.  Factors relevant to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the quality of the explanation provided in the opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  Dr. Barnard opined a series of moderate, marked, and severe limitations in Plaintiff's ability to perform basic work activities.  Tr. 280.  However, Dr. Barnard's only clinical finding was anxiety, which Dr. Barnard opined "would affect [Plaintiff's] ability to work on a daily basis to a moderate extent."  Tr. 279.  The ALJ found Dr. Barnard did not explain how a clinical finding of anxiety causing moderate impact on Plaintiff's ability to work justified the diverse range of moderate, marked, and severe findings Dr.

Barnard made.  Tr. 21.  This was a specific and legitimate reason to reject Dr. Barnard's opinion.

Second, the ALJ found Dr. Barnard's opinion was inconsistent with the longitudinal medical record.  Tr. 21.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631.  As discussed *supra*, the ALJ observed the medical record regularly showed Plaintiff demonstrated alert and cooperative behavior, normal speech, normal thought process, and good concentration and attention span.  Tr. 18; *see* Tr. 399-400, 425, 429-30, 435-36, 438-39, 445-46, 451-52, 457-58.  The record also showed Plaintiff demonstrating appropriate mood and affect.  Tr. 298, 302, 306, 347, 360, 389-91, 436, 446, 469.  Even if Plaintiff can identify evidence that can be interpreted more favorably to Plaintiff's position, the evidence is susceptible to more than one rational interpretation, and therefore the ALJ's ultimate conclusion must be upheld.  *See Burch*, 400 F.3d at 679.

In light of the inconsistencies between Dr. Barnard's observations and the record as a whole, the ALJ suggested Plaintiff may have exaggerated his symptoms during Dr. Barnard's examination.  Tr. 19, 21.  Evidence that a claimant exaggerated his symptoms is a clear and convincing reason to reject the doctor's

conclusions. *Thomas,* 278 F.3d at 958. The ALJ noted Plaintiff generally displayed normal psychological functioning "except when seeking state assistance." Tr. 18. A review of the record supports the ALJ's conclusion. The longitudinal record of Plaintiff's mental status examinations is inconsistent with the findings of Dr. Barnard's mental status examination. *Compare* Tr. 281-82 *with* Tr. 298, 302, 306, 347, 360, 389-91, 399-400, 425, 429-30, 435-36, 438-39, 445-46, 451-52, 457-58, 469. The ALJ reasonably concluded that Dr. Barnard's opinion was not supported by the longitudinal medical evidence.

Third, the ALJ found Dr. Barnard's opinion was based heavily on Plaintiff's self-reports. Tr. 21. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. Here, Dr. Barnard conducted a clinical interview that was based entirely on Plaintiff's self-reports. Tr. 278. Dr. Barnard also performed a mental status examination, but the ALJ discredited the results because the inconsistencies with the record suggested Plaintiff exaggerated his performance on this examination. Tr. 21. As discussed *supra*, the ALJ gave several legally sufficient

reasons for rejecting Plaintiff's symptom testimony.  Plaintiff argues that because

Dr. Barnard performed a mental status examination, the ALJ unreasonably

concluded that Dr. Barnard "relied heavily" on Plaintiff's self-reports.  ECF No. 15

at 18-19.  However, in light of the ALJ's observations of Plaintiff's mental status

examination results being inconsistent with the longitudinal evidence and

Plaintiff's activities, the ALJ reasonably concluded that the level of impairment Dr.

Barnard observed was not reflective of Plaintiff's capabilities and therefore based

heavily on Plaintiff's self-reports.  Because the ALJ provided legally sufficient

reasons to discredit Plaintiff's symptom complaints, Dr. Barnard's reliance on

Plaintiff's subjective symptom complaints was a specific and legitimate reason to

discredit Dr. Barnard's opinions.  The ALJ's conclusion is supported by substantial

evidence.

Fourth, the ALJ found Dr. Barnard's opinion was inconsistent with

Plaintiff's reported activities.  Tr. 21.  An ALJ may discount an opinion that is

inconsistent with a claimant's reported functioning.  *Morgan*, 169 F.3d at 601-02.

For example, Dr. Barnard opined Plaintiff would have moderate to marked

impairments in his ability to understand, remember, and persist in tasks following

instructions.  Tr. 280.  However, the ALJ observed Plaintiff was able to complete

his high school diploma online and persisted in this task over the course of several

months.  Tr. 19; *see* Tr. 463.  Dr. Barnard also opined Plaintiff would be unable to

communicate in a regular competitive environment or outside of a sheltered workshop. Tr. 280. However, the ALJ observed Plaintiff was able to travel to Alaska by himself. Tr. 19; *see* Tr. 45-46. The ALJ reasonably concluded that Dr. Barnard's opinion was inconsistent with Plaintiff's activities. This was a specific and legitimate reason to discredit Dr. Barnard's opinion.

### 3. Dr. Johansen

Dr. Johansen reviewed Dr. Barnard's report on December 30, 2013, and opined Plaintiff would have moderate limitations in his ability to understand, remember, and persist, to learn new tasks by following very short and simple instructions, to perform routine tasks without special supervision, be aware of normal hazards and take precautions, ask simple questions or request assistance, and set realistic goals and plan independently; that Plaintiff would have marked limitations in his ability to understand, remember, and persist, to learn new tasks by following detailed instructions, perform activities within a schedule, and make simple work related decisions; and that Plaintiff would have severe limitations in his ability to communicate and perform effectively in a work setting, complete a normal workday without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting. Tr. 379. Because Dr. Johansen's opinion was contradicted by Dr. Donahue, Tr. 88-90, and Dr. Gilbert, Tr. 101-02,

the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ discredited Dr. Johansen's opinion for relying on Dr. Barnard's discredited opinion. Tr. 21. An ALJ may reject an opinion that is based heavily on another physician's properly discredited opinion. *Paulson v. Astrue*, 368 Fed. App'x 758, 760 (9th Cir. 2010) (unpublished). The ALJ observed Dr. Johansen reviewed only Dr. Barnard's report, and offered no independent objective findings for his affirmation of Dr. Barnard's report. Tr. 21-22. Because the Court found *supra* that the ALJ provided legally sufficient reasons to discredit Dr. Barnard's opinion, this was a specific and legitimate reason to discredit Dr. Johansen's opinion.

### 4. *Mr. Hardy*

Mr. Hardy provided mental health counseling to Plaintiff between August 5, 2013, and April 27, 2015. Tr. 386, 404. On April 7, 2015, opined Plaintiff's anxiety rendered him unable "to work in a normal work environment at this time and [he did] not have skills that would allow him to work at home." Tr. 386. Mr. Hardy does not qualify as an acceptable medical source. 20 C.F.R. §§ 404.1502,

416.902[2] (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). An ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. §§ 404.1527(f), 416.927(f).[3] An ALJ must give reasons "germane" to each source in order to discount evidence from non-acceptable medical sources. *Ghanim*, 763 F.3d at 1161.

First, the ALJ found Mr. Hardy's opinion was heavily based on Plaintiff's subjective reporting. Tr. 22. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan,* 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. A review of Mr. Hardy's treatment notes shows the notes largely contain Plaintiff's self-reports, and little to no objective observation. Tr. 318-37, 366-69, 404, 410-23, 433-34, 444, 450, 462-64. Because the ALJ provided legally sufficient reasons

_____

[2] Prior to March 27, 2017, the definition of an acceptable medical source was located at 20 C.F.R. § 416.913.

[3] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. §§ 404.1513(d), 416.913(d).

to discredit Plaintiff's symptom complaints, Mr. Hardy's reliance on Plaintiff's subjective symptom complaints was a germane reason to discredit Mr. Hardy's opinion.

Second, the ALJ found Mr. Hardy's opinion was not based on any documented examination of Plaintiff's psychological functioning. Tr. 22. A medical opinion from a non-acceptable source is entitled to more weight if it is supported by medical evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f). Mr. Hardy's treatment notes do not show mental status examinations or other objective observations of Plaintiff's psychological functioning. Tr. 318-37, 366-69, 404, 410-23, 433-34, 444, 450, 462-64. This was a germane reason to discredit Mr. Hardy's opinion.

Third, the ALJ found Mr. Hardy's opinion was inconsistent with Plaintiff's reported activities. Tr. 22. Inconsistency with a claimant's daily activities is a germane reason to reject lay testimony. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163-64 (9th Cir. 2008); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). For example, Mr. Hardy noted Plaintiff "rarely leaves his home and never without the support of a family member." Tr. 386. However, the ALJ observed Plaintiff was able to travel by himself from Yakima, Washington to Alaska. Tr. 19. Indeed, many of Mr. Hardy's treatment notes document Plaintiff attending his sessions without a family member accompanying him. Tr. 404, 410,

414-423. Despite Mr. Hardy's extensive treatment history with Plaintiff, and thus longer-term ability to observe Plaintiff's functioning, Mr. Hardy's opined limitations are so extreme that they are clearly inconsistent with Plaintiff's activities. This was a germane reason to discredit Mr. Hardy's opinion.

Fourth, the ALJ found Mr. Hardy's opinion was inconsistent with the longitudinal medical evidence. Tr. 22. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis*, 236 F.3d at 511. Although Mr. Hardy opined Plaintiff's anxiety was severely limiting, the longitudinal record shows Plaintiff demonstrated alert and cooperative behavior, normal speech, normal thought process, and good concentration and attention span. Tr. 18; *see* Tr. 399-400, 425, 429-30, 435-36, 438-39, 445-46, 451-52, 457-58. The record also shows Plaintiff demonstrating appropriate mood and affect. Tr. 298, 302, 306, 347, 360, 389-91, 436, 446, 469. The ALJ reasonably concluded that this record was inconsistent with Mr. Hardy's opinion. This was a germane reason to discredit Mr. Hardy's opinion.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.**
The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** THE FILE.

DATED April 20, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE